UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21668-CV-WILLIAMS/REID

CREELED, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

This cause before the Court on Plaintiff's Motion for Entry of Preliminary Injunction ("Plaintiff's Motion"). [ECF No. 6]. This matter was referred to me by the Honorable Kathleen M. Williams for a report and recommendation. [ECF Nos. 9; 13]. Plaintiff, CreeLED, Inc. ("CreeLED" or "Plaintiff") moves, for entry of a preliminary injunction against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" attached to Plaintiff's Complaint [ECF No. 1], (collectively "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). *See* [ECF No. 6].

The Court convened a hearing on June 12, 2023, at which only Plaintiff's counsel was present and available to present evidence supporting the Motion. [ECF No. 25]. The Court has carefully considered the Motion for Preliminary Injunction, the record, and the governing law. For the reasons stated below, it is **RECOMMENDED** that Plaintiff's Motion be **GRANTED**.

## BACKGROUND[1]

Plaintiff is the owner of the federally registered trademarks identified in Schedule B (the "CreeLED Marks") attached to the Declaration of David Marcellino ("Marcellino Decl."), filed with Plaintiff's Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [ECF No. 6-3]. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the CreeLED Marks. [*Id.* at ¶¶ 6–10, 16].

CreeLED actively polices and enforces its trademarks. [*Id.* at ¶¶ 11–14]. CreeLED suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time third parties, including Defendants, sell goods using identical or substantially similar unauthorized copies or derivatives of the CreeLED Marks. [*Id.* at ¶ 18].

Defendants do not have, nor have they ever had, the right or authority to use the CreeLED Marks for any purpose. *See* [*Id.* at ¶ 11]. Despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods using the CreeLED Marks without authorization ("Defendants' Goods"). [*Id.*].

Given Defendants' counterfeiting and infringement of the CreeLED Marks, Defendants' Goods are indistinguishable to consumers, both at the point of sale and post-sale. Plaintiff is suffering irreparable harm and damage by the incalculable profit Defendants are deriving by using Plaintiff's CreeLED Marks to drive consumers to the e-commerce stores and commercial websites operating under the Seller IDs. [*Id.* at ¶¶ 15–18].

Plaintiff has investigated the promotion and sale of counterfeit and infringing versions of

---

[1] The factual background is taken from the Plaintiff's Complaint, Motion, and supporting Declarations submitted by the Plaintiff.

its branded products by Defendants. [*Id.* at ¶¶ 11–14].  Plaintiff accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeit copies and infringements of Plaintiff's CreeLED Marks, and requested each product to be shipped to an address in the Southern District of Florida.  [*Id.*]. Plaintiff conducted a review and visually inspected Defendants' Goods and determined the products were nongenuine, unauthorized versions of Plaintiff's products bearing the CreeLED Marks.  [*Id.*].

## LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## DISCUSSION

The declarations Plaintiff submitted in support of its Motion for Preliminary Injunction support the following conclusions of law:

Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits and infringements of the CreeLED Marks. Because of the infringement of the CreeLED Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted.

Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights. There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's CreeLED Marks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

The public interest favors issuance of a preliminary injunction to protect Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of the CreeLED Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## **CONCLUSION**

Upon review of Plaintiff's Complaint, Motion, and supporting evidentiary submissions, it is **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction [ECF No. 6] be **GRANTED**, under the terms set forth below:

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court as follows:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the CreeLED Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the CreeLED Marks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the CreeLED Marks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by,

any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

(2) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the unauthorized use of the CreeLED Marks on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3) Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4) Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, and restrain any other financial accounts tied thereto. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(5)     Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6)     This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the CreeLED Marks at issue in this action and/or unfairly competing with Plaintiff.

(7)     This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

(8)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

## **OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), the parties have **SEVEN** **(7)** days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 14th day of June, 2023.

*[signature]*

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **United States District Judge Kathleen M. Williams;**

     **Counsel of Record**